Kazonis v. Tamburello, Case 16-0202 is being taken under advisement. Will the Clerk please call the next case. Will the counsels that are going to orally argue on behalf of the parties please approach the podium. Are all counsels here? I know we're starting a little bit early. More counsels are coming. Tell me when you're ready to proceed. Neil McKnight on behalf of the Guarantee Trust Life Insurance Company. Samuel Orticelli on behalf of Keith Lindvig. Nathaniel Tone on behalf of Larry Graves. Are both of you going to argue for the appellee? I'm going to argue. I was planning to argue. Well, each side will have 15 minutes. So your 15 minutes you'll have to budget amongst yourselves. Could we take five minutes to decide how that's going to be allocated? Certainly. You may. Okay. Thank you. And, Justice Harris, I'll be taking, I think, ten and reserve five for rebuttal if necessary. Counsels, consider having 20 minutes. Tone. Thank you. Thank you. Counsel for the appellant, proceed. Thank you. Good morning. My name is Neil McKnight. I represent the Guarantee Trust Life Insurance Company. May it please the Court. I'm going to discuss this morning why we believe that the trial court erred when it made a factual determination on a motion to dismiss that the discovery rule and the fraudulent inducement statute did not apply to extend the statute of limitations in the case at bar. The first issue presented is how the discovery rule is applied when a plaintiff becomes aware that it has an injury that was caused by one source but is unaware of a second source. When the facts of the causation are in the control of a defendant and a punitive defendant who are engaged in a conspiracy, making the information unavailable to the plaintiff. GTL submits that the rule, the discovery rule, told the statute of limitations until such time as it learned of the second wrongful cause through a discovery deposition of Mr. Keith Lindvig. And where do you get that? I mean, I think the answer to your first question, or the answer you would want to your first question, is you look to Mitzias and the analysis there. Exactly. Okay. And the analysis there is that there was something that prevented you from knowing about these additional defendants. And my question is, what in the record suggests that you were prevented from knowing about these additional defendants? Respectfully, I think it's more than just knowing of the other defendants. I think you have to have specific information with respect to the acts that are committed by the individual defendants. So, for example. Even the discovery rule, even if Mitzias doesn't change the discovery rule at all, and I think it does, but it's new or should have known. You don't have to know. At the very least, I mean, the most generous to you is new or should have known. Why shouldn't you have known? You knew because you alleged that somebody on the inside was part of the job. Mm-hmm. You, you know, what prevented you from knowing? I guess that's, I mean, I just, and if the answer is nothing and we don't think that we have to show you that there was, then tell me that. No, I don't, and I didn't mean to interrupt. No, no, no, no. I'm invited to. Is Mr. Graves a party to this? To the lawsuit? He is. No, no, no, I understand that, but I mean in terms of how this came together to get. He is, and we believe that he is. Come to that conclusion. He is. We believe that he is. And if I can get back to the point, I believe that there were acts that prevented the plaintiff from learning of the conspiracy and ultimately the fraud that were specifically alleged in the complaint. But in addition, I think that the most important thing to understand is that merely suspecting an individual is insufficient to state a cause of action against those individuals. So the first issue is we have to know who these people are and we have to know sufficient facts to state a cause of action against the individuals to state a claim for conversion or for unjust enrichment or for fraud. If we don't have that information, we run afoul of potentially Rule 137 and potentially have sanctions against us. Under those circumstances, what we need to have is information that's available to us that supports a cause of action that can be made against the individual defendants. That would be outside Mr. Cribbs. That would be Mr. Lindvig and Mr. Graves. The reason why that information was not available to us was because of the very nature of the conspiracy that was being engaged in by these individuals, by the very nature of these type of things. You don't come to people and you say, I committed a fraud or I lied to you. But more particularly, the complaint specifically states that there are documents that were forged. There are documents that were destroyed. There were lies that were made and that there were misrepresentations that were made to GTL by the individuals, Mr. Lindvig and Mr. Graves, while they were employed by GTL and while they served as fiduciaries to GTL. So the existence of the conspiracy itself, as well as the conduct in lying to GTL, as well as destroying documentation that was in possession of GTL, as well as documentation in possession of the individual defendants, prevented GTL from learning that information and being able to proceed in a cause of action against Mr. Lindvig and Mr. Graves. Were some of these people deposed? Mr. Lindvig was deposed. And Mr. Fess? Mr. Fess was also deposed. And they described to you how these transactions took place and how the money was channeled to Mr. Cribbs? I think what they described to us is from Mr. Lindvig's description, Mr. Lindvig described how the money was channeled to Mr. Cribbs and Mr. Fess described internally the procedure at GTL where he relied upon the statements that would be made by Mr. Graves and Mr. Lindvig in making a determination as to whether or not funds should be released from the custodial account as we described in the briefs. And it was by virtue of that discovery that you had enough to bring them in as defendants? That's correct. So my question is what prevented you from doing that earlier? What prevented you? Nothing prevented us other than the course of the case goes on. For example, and I don't believe that this is part of the record, but the underlying case that was previously filed, the original case, was very tortured. For example, there was a period of time when Mr. Cribbs' attorney was ill. There was issues with regard to motions to compel. There was issues with regard to requests to admit facts. A summary judgment was granted in favor of GTL, which was then subsequently reversed based upon the rulings of this court and others regarding requests to admit facts. So my position is that the underlying litigation should be treated as the investigation, meaning that the – so when we look at this and the court looks at whether or not we acted in due diligence, what we did, and we did this by, one, filing suit against Mr. Cribbs, and then, two, the entire course of the underlying lawsuit that was ultimately refiled should be treated as the investigation. And so if we're looking at it from a timeframe, we don't look at it something in the middle of the underlying lawsuit or at the beginning of the underlying lawsuit or at the end of the underlying lawsuit because what's going to end up happening is then the courts get bogged down in the minutia of decisions that are being made at the trial court level with regard to discovery, with regard to what I will call issues of privilege, anything that may come up in an ordinary discovery dispute, which would justify either earlier or later conduct of discovery. I can say to the court that the discovery was conducted, pursued to the rules, during the course of the underlying litigation, and once Mr. Lindvig gave his testimony where he specifically described where the money was going and how he was receiving money back from Mr. Cribbs, that was sufficient information based upon our belief to proceed in action against Mr. Lindvig and then ultimately against Mr. Graves. The next issue is, unless there's any questions, the next issue is the question of whether or not the fraudulent concealment statute applies too. And I think it's a consistent analysis in both situations, except I think it's important to note that there was a question in the trial court as to whether or not these individuals who were sued, and I'm talking about Mr. Lindvig and Mr. Graves, were fiduciaries. On the face of the complaint, there's a specific description of Mr. Graves as being an officer of the court, an officer of GTL, and that Mr. Lindvig is an insurance producer who's in the business of handling money, and under those circumstances, both of those persons are, and there's an allegation that's in the complaint that those persons are fiduciaries. When we're talking about the fraudulent inducement statute, ordinarily there's a requirement that there's a misrepresentation that made an affirmative act upon which we rely, but in the case of fiduciaries, we believe, and it's our position, that under those circumstances mere silence is enough to establish that the fraudulent inducement statute applies. And so we are of the opinion, and we believe that the rule of law should be that it was incumbent upon Mr. Lindvig and Mr. Graves to come forward and identify to GTL, and I say GTL, let's guarantee trust, that these actions were going on, and their silence and their acquiescence in this, including as serving as directors of the Somerset Reinsurance Company, constitutes sufficient sort of conduct that would justify the application of the fraudulent inducement. Okay, but the trial court didn't reject it on that basis. He rejected it because he said it doesn't apply to the concealment of who defendants are. It only applies to the concealment of the claim. I think that's what the trial court did, correct? I think it did, but as part of it, I think the court, in its original ruling, also stated that we did not. That they're not fiduciaries. Yeah, they're not fiduciaries, and then the next step would be that they would, that we were not providing sufficient facts to establish those things that would constitute fraudulent. Okay, but even if you had, he says it doesn't apply. True. Okay. Yeah, I agree with that, and that's what the ruling of the trial court was, and that's the reason why when I say to the panel that what I think there's an overlap in this analysis with respect to whether or not there's these multiple causes, and when we should, when did we should have known, and what constitutes the ability to split that out to a second source. And so it's our opinion that based upon either the fraudulent concealment statute or the discovery rule, that that timeframe should be five years running from the date of Mr. Lindvig's discovery deposition. And that, and under those circumstances, the complaint filed against Mr. Graves, as well as a complaint filed against Mr. Lindvig, were timely, and that the decision of the trial court should be reversed. I think that's all I have, and I'll reserve some time if I have later. Sure. Thank you. Good morning. I'm Nathaniel Tone on behalf of Larry Graves. May it please the Court. It's my understanding that a lawyer, when a statute of limitations runs, begins to run when a plaintiff knows of his injury and that injury was wrongfully caused. Or should have. Or should have. I don't know. Okay. Guarantee filed its initial complaint on December 13, 2006, alleging five, with five clauses of action. Unjust enrichment, conversion, constructive fraud, concert of action, and civil conspiracy. In 2013, after it dismissed that, voluntarily dismissed that original complaint, it filed another complaint alleging the same clauses of action, but including Mr. Lindvig and Mr. Graves' respondent discovery. Now, as a matter of law, the statute of limitations began to run upon the filing of that 2006 complaint. You know, I'm just happy for one second just to make sure that we're clear. I think the appellants are certainly clear. You do not contest going back and forth on the 304A. You don't contest that we have jurisdiction over this. No, no, no. Okay. Thank you, Bernard. Thank you. Guarantee failed to make the claim against Mr. Lindvig and Mr. Graves for six years. And then it highlights a lack of due diligence on their part to ascertain, to investigate this claim. Graves was an employee of Guarantee at the time. Guarantee knew that it was looking for an employee in the original complaint, but alleged an unknown employee. Well, what about the appellant's argument, which honestly I hadn't thought about, but the discovery in court? You know, we all know in this room, courts move slowly. Things happen slowly. They're in there. They're trying to investigate the parameters of their claim by virtue of taking discovery. What about the fact that that just takes time? If you're diligently – I mean, how does that fit in in your mind? Well, I have to say that I don't think that they diligently investigated because they didn't even take the deposition of the original defending critics until more than five years after the complaint was filed and about a month or two before it was set for trial. They compounded discovery requests in 2008. They received Mr. Graves' name in response to those discovery requests in 2008, and Mr. Graves, again, was an employee of theirs. So if they knew they were looking for an employee, it should be incumbent upon them to look at the employees they have and see who's involved with this. Mr. Graves didn't do anything to prevent them from finding out that he was allegedly involved in this. They assert that he destroyed documents and he forged documents, but there's no specificity. They don't assert what documents were destroyed, when they were destroyed, who destroyed them. There's nothing to assert. Their lack of diligence in investigating this claim is clear. And, again, it's a matter of law because no other – they knew of these injuries in 2006 when they filed the initial complaint. There were the exact same causes of eviction filed in the 2013 eviction. Do you think there's any – you represent Mr. Graves. Correct. Is there any difference between your legal position or factual position and Mr. Ludwig's? I mean, do you see a difference? I do not really see much of a difference, no. Mr. Ludwig's attorney couldn't speak to that. Right. But I really don't. I think they're in the same boat. And we – many of the motions we filed were joint motions, motions to dismiss. And we filed joint briefs. So they're pretty much the same. As far as the discovery rule goes, the cause of eviction occurred when the plaintiff knew or should have known of his injury and that it was wrongfully caused. The statute of limitations begins to draw in and the plaintiff must exercise due diligence in investigating the cause of eviction and the potential defendants. But when complaints are filed, only one conclusion can be drawn as a matter of law that the very latest statute of limitations begins to run, and it's that the filing of that complaint. In the McCormick case we cited, the plaintiff filed a complaint against the same injuries but against a different doctor. The court had held the statute of limitations. Do you think McCormick's still good law after Mitzias? Don't you think you have to read McCormick in light of Mitzias and what Mitzias says? I think Mitzias actually agreed with many of the points that McCormick made. And as far as Mitzias goes, the reason that the plaintiff was – it was a product liability claim that they brought second. First was a medical malpractice claim. But it speaks of new causes, but it also speaks of new defendants. Mitzias seems to suggest that whether it's a new cause of your injury or a new defendant, if you could not have known about that cause or you could not have known about that defendant, that then the discovery rule begins when you knew or should have known about that cause or that defendant. And I think McCormick doesn't recognize that or doesn't take that into account. I'm not sure it would have changed the result to McCormick at all. I understand what you're saying. And then in Mitzias' battle, the plaintiff was prevented from discovering the cause of action because it was based upon scientific evidence that had not been – that did not exist at the time of the original complaint. So they were totally prevented from finding that evidence. So I would assume in this case that Mr. Graves put – you know, really threw the employer off and made it look like it was somebody else and made it look like it wasn't him and took all these steps to cover that he was the inside guy. Don't you think Mitzias could suggest that if they couldn't have known that it was your client – No, and I don't think – I don't know you say that's not the fact. Because they still have a duty to investigate diligently, and they did not do so. Again, Mr. Graves was an employee. They knew that the Somerset Company was the company that had supposedly fired them a month. They knew Graves was an employee. There's documents they had that he signed, you know, in relation to Somerset. You know, it's – honestly, it's just ignorance that they didn't discover Graves. And again, in 2008, he was – Mr. Cribbs, in response to interrogatories, disclosed Mr. Graves' name as somebody who would have information about this claim. And they didn't do anything about it. They waited five more years to even file a complaint. And then he was able to respond in discovery. He wasn't even a defendant yet. And how many – was it six years before they did discovery? They recounted discovery requests in 2008, and they took depositions in 2012, a month or two before it was set to go to trial. Are you lawyers? Are you equally dividing your time? Yes. It's time to say yes. Thank you. Good morning. If it pleases the Court, I don't have a whole lot more to say than what counsel has already said. I don't want to be repetitive. But there is a few points of law that I want to make that I think are supportive of our position. That is, first of all, there's a case of Barrett v. Goldberg. I don't have the citation in my notes here, but I could provide it if needed. Is it in your briefs? Did you cite it in your brief? Go ahead and tell us about it. Okay. That case states that any allegedly fraudulent statements or omissions that form the basis of the cause of action may not constitute the fraudulent concealment in the absence of the showing that they tend to conceal the cause of action. So, in other words, the actions that counsel for plaintiffs says that prevented them from discovering the supposed wrongdoing was the actual same action that allowed these disbursements from the custodial account to be made in the first place. So the case of Barrett v. Goldberg says that you cannot use the same activities to be the basis of fraudulent concealment in the absence of the showing that they tend to conceal the cause of action. Well, I think what you're saying is what a lot of cases say, which is we don't have to get to that case, which if it's not in your briefs we're not going to consider, which is there has to be a causal link between the concealment and their inability to bring these claims against their claims. Correct. There has to be causation. Correct. You can do all the fraud in the world, but if it doesn't conceal the claim or conceal the defendants, then it doesn't stand. That is the point. Thank you. I think causation is, as I discussed with your co-counsel, I think it's the issue here. So, again, along those lines, and another thing, answering your previous question to my co-counsel here, what I think needs to be considered is what was it in the discovery deposition of Mr. Lindvig that was discovered that couldn't have been discovered any earlier? Whatever it was that he said, which I disagree with counsel's characterization, but whatever it was that he testified to in his deposition, what was it that couldn't have been found out earlier if the deposition had been taken earlier? It's not that he concealed it in between the times. Another point that I wanted to make is that GTL filed a motion to convert Larry Graves to a defendant. That's in the record. In that motion, it's written in the motion that Larry Graves obviously determined that there were sufficient funds to be distributed as evidenced by the correspondences authorizing the disbursement. That was his argument, that Larry Graves obviously made the determination. That determination was made in 2001 and 2002 when the disbursements were made. If it was so obvious that he made the determination, why was it not obvious that he would be a person or Mr. Lindvig would be a person to investigate as to whether they had involvement in a so-called fraud? The other thing that I wanted to mention that I don't think was already covered is that the issue that counsel had raised in his testimony  about the fiduciary argument. These gentlemen, for purposes of the motion, are admitted to be fiduciaries. However, the record shows that they were no longer in the employ of Guaranteed Trust after 2005. Where is that in the record? It's in the record in Motions for Summary Judgment in several places. They were no longer employees as of 2005 at separate times. But at the latest, 2005, they were no longer employees. So any argument that they were fiduciaries has to go out the window after that because they were not fiduciaries after that time. I don't believe, I could be wrong, I don't believe that's in the briefs, a citation to where in the record that is. But that's what you're telling us. And I was unclear, obviously, as to when they were and were not employees. Let's see. Perhaps, I don't want to take your time right now. Perhaps during his rebuttal you can look at that and give us the record citation on that. That would be helpful. Thank you.  Defendant, your rebuttal, please. I know you've heard this before, but I'll be brief. I'm sorry, I don't want to take up your time, but there's something I meant to ask of you. Sure. The whole equitable arguments, which they say you forfeited and didn't raise below, and I don't believe you responded to a new inquiry, what's your position on your equitable arguments? These are equitable claims, the actual citation says they're plausible. Well, on the face of the claims, they're quasi-equitable claims based upon the unjust enrichment and the other causes of action. You're not abandoning those, are you? I'm not. Okay. I think what I'd like to get to in really one of the issues that's perhaps been less dwelled upon is these are questions of fact. These are questions of fact of who knew what, when, and why. And throughout all of these cases with respect to the discovery rule as well as the fraudulent concealment statute, most of these cases, particularly in the context of the question of when and where, the individuals and the plaintiffs should have known or when they knew of the causes of action, are questions of fact. And if you look back, you'll see that they're decided at the point of summary judgment as opposed to motions to dismiss. And I think that's particularly the case in our action against Mr. Graves and against Mr. Lindvig because there are facts presented in the complaint. And because there are disputes with respect to those facts, those are issues that are ordinarily tried to a jury or to the trier of fact under those circumstances to find out who, what, where, and when with respect to the reasonableness and the diligence that's undertaken by a plaintiff. And so for those purposes, I think what we have presented here is a question of fact. And I think also what we have is a situation where counsel mentioned something about the determination. I'm going to stop you there. It's a 2619, and you could have requested an evidentiary hearing. Did you do that? We did not request an evidentiary hearing. But at that point, all of those facts that are set forth in the complaint are deemed admitted for those purposes. And there are specific facts in the complaint with regards to conduct that's undertaken by these individuals. And to the extent that there's even a discussion of the fiduciary issue, there's a disagreement, at least in the minds of the trial court, as to whether or not these people are fiduciaries or not. And so those are fact questions that impact upon the overall determination as to whether or not the fraudulent concealment statute applies or the discovery rule applies. And just as a broader matter, if we don't read, and if the law doesn't read this sort of wrongful causation, and the analysis is provided in Matsius, and I call it IFLO because it's easier for me. If it's in law, it's going to reward individuals who are engaged in fraudulent acts and they're engaged in the process of being, of concealing information from parties, from concealing information from individuals, because they can string it out, for the lack of a better description, until such time as they say, look, now I've got admitted. And ironically, I took the discovery deposition of Mr. Lindvig, and Mr. Lindvig, during the course of his discovery deposition, specifically acknowledged receiving payments coming from Mr. Kribs and had no source and no information with regard to why those payments were coming to him and what the basis was there for. That was a pretty, what I would say, astounding set of facts to be revealed during the course of this discovery deposition. But if you look at what the defendants are saying, that's post-statute of limitations, so he's free to admit it. He's free to admit it. In fact, under their theory, Mr. Lindvig could get up and say, I did it. I stole from them. Mr. Graves was in on it with me, and you can't touch me. And I don't think that's what the law intends. So for that reason, we'd ask that the judgment be reversed and sent back for further proceedings in the trial court. Thank you to both counsels, or all counsels rather, Guaranteed Trust Life Insurance Company v. Robert Kribs, Keith Lindvig, and Larry Graves. Case 16-0672 is taken under advisement.